## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ROBERT FLOYD RAMSEY,      )
                                  )
          PLAINTIFF,      )
                                  )
VS.                        )     CASE NO. 09-CV-344-FHM
                                  )
MICHAEL J. ASTRUE,      )
Commissioner of the      )
Social Security Administration,      )
                                  )
          DEFENDANT.      )

## OPINION AND ORDER

Plaintiff, Robert Floyd Ramsey, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's July 29, 2005 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held September 18, 2008 and a supplemental hearing was held November 25, 2008. By decision dated January 14, 2009, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on March 30, 2009. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that

of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).

Even if the Court might have reached a different conclusion, if supported by substantial

evidence, the Commissioner's decision stands.  *White v. Barnhart*, 287 F.3d 903, 908

(10th Cir. 2002).

Plaintiff was 38 years old at the time of the supplemental hearing. [R. 275].  He

claims to have been unable to work since December 26, 2003, due to back pain,

depression and anxiety.  The ALJ determined that Plaintiff has severe impairments

consisting of mild osteoarthritis of the left hip, degenerative disc disease of the

lumbosacral spine, without significant stenosis and obesity, but that he retains the

residual functional capacity (RFC) to occasionally lift and/or carry 20 pounds, frequently

lift and/or carry 10 pounds, push and/or pull consistent with lifting and carrying

limitations, stand 3 hours in an 8 hour workday, walk 2 hours in an 8-hour workday and

sit 6 hours in an 8 hour workday. [R. 14].  Based upon the testimony of a vocational

expert (VE), the ALJ found that Plaintiff could return to his past relevant work as a salad

maker with that RFC. [R. 20].  He concluded, therefore, that Plaintiff is not disabled as

defined by the Social Security Act. [R. 21].  The case was thus decided at step four of

the five-step evaluative sequence for determining whether a claimant is disabled.  *See*

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps);

*Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in

detail).

Plaintiff asserts the following allegations of error: that the ALJ failed to perform

a proper credibility determination; and that the ALJ failed at step four of the sequential

evaluation process. For the reasons discussed below, the Court affirms the decision of the Commissioner.

## Credibility Determination

Plaintiff states that "some of the ALJ's questioning was not probative, and indicates a predisposition to assume facts not in evidence concerning Plaintiff's credibility." [Dkt. 20, p. 2]. In his reply brief, Plaintiff states: "The transcript makes the ALJ's attitude toward the Plaintiff clear." [Dkt. 22, p. 1]. Plaintiff cites *Baca v. Department of Health and Human Services*, 5 F.3d 476, 479 (10th Cir. 1993) and *McClure v. Independent School District No. 16*, 228 F.3d 1205, 1215 (10th Cir. 2000) for the proposition that a full and fair hearing is a constitutionally protected right because due process requires a neutral tribunal. Plaintiff claims that he was not afforded the full and fair hearing as mandated because the ALJ "criticized" and "argued" with him and that the ALJ "was critical" of him and "accused" him during the supplemental hearing. [Dkts. 20, 22].

As the Court understands it, Plaintiff's argument is that the ALJ's credibility determination was not proper because the ALJ was not a neutral decision-maker.

The hearing transcript reveals that the ALJ questioned Plaintiff regarding his past work history that showed minimal earnings throughout the years before Plaintiff claims he was injured in a vehicular accident. [R. 279-286]. The ALJ expressed concern that Plaintiff's earnings record did not correspond with Plaintiff's testimony that he quit school to work and that he enjoyed working and changed jobs more than 50 times because he was "looking around for a job ..(he)... wanted to do." [R. 285].

The ALJ also questioned Plaintiff about how he managed to live on the wages that were reported to the Social Security Administration. [R. 285-288]. When Plaintiff

responded that he worked "odd jobs" the ALJ pointed out to him that he was required to report income he received. [R. 286].

These were all legitimate issues for the ALJ to explore in determining whether Plaintiff was credible and the ALJ's attempt to clarify Plaintiff's job history, income, living conditions and daily activities was in keeping with the ALJ's responsibility to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. *See Hawkins v. Chater*, 113 F.3d 1164, 1167 (10th Cir.1997).

There is no suggestion in the transcript that the ALJ had a personal bias against Plaintiff or that the ALJ considered information outside the record. Rather, Plaintiff is concerned with the conclusions the ALJ drew from the evidence in the record and the pointed questions the ALJ asked Plaintiff about the information in the record.

While the ALJ's questions were abrupt and could have been delivered in a more tactful fashion, his questioning addressed issues raised by the evidence and the ALJ provided Plaintiff an opportunity to explain his version of the facts. This scenario is preferable to one where the ALJ does not raise issues or concerns he has with the evidence to the claimant at the hearing and then enters a decision without having heard any explanation the claimant may have offered regarding those issues.

Plaintiff's attorney was present during the ALJ's questioning of the Plaintiff and, had he thought the ALJ harbored an inaccurate impression of his client that required rehabilitation, he had the opportunity to do so at that time. The Court finds Plaintiff's allegation that the ALJ failed to provide Plaintiff with a full and fair hearing is without merit.

Plaintiff next suggests that the ALJ's statement in his written decision that the medical treatment Plaintiff received was essentially conservative in nature and that no surgery has been recommended was improper. [Dkt. 20, p. 3].

That statement appears in the written decision at the end of the ALJ's review of all the medical evidence. [R. 19]. Included in the medical evidence reviewed by the ALJ was the report from R. Tyler Boone, M.D., the orthopedic surgeon who examined Plaintiff on January 24, 2007. [R. 219-220]. Dr. Boone said:

> Chronic back pain of undetermined etiology. There is no doubt he has some very minimal neural foraminal stenotic change but I do not see anything significant. His myelogram/postmyelographic CT is normal. His disk hydration on the MRI in September 2006 was basically normal. I feel there is probably an element of functional overload present in this gentleman. I do not feel that he has a surgical problem. I have nothing to offer this gentleman.

[R. 220].

That there was an absence of disk pathology and that Plaintiff was not in need of any kind of surgical procedure was also observed by T. Jeffrey Emel, M.D., the orthopedic specialist who saw Plaintiff in October 2004 and July 2007. [R. 218, 221-222]. Plaintiff's medical care providers at Tulsa Urban Clinic noted minimal stenosis and normal mylegram in August 2007 and referred Plaintiff to physical therapy. [R. 235].

The ALJ correctly noted this evidence while comparing Plaintiff's allegations of disabling pain with the medical evidence. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d), (the ALJ is required consider all relevant medical evidence of record in reaching a conclusion as to disability); *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989). That no physicians found Plaintiff's impairment was severe to the extent that surgery or an

aggressive treatment regimen was required was one of many reasons the ALJ gave for discounting Plaintiff's allegations of total disability. Medical and clinical findings that are inconsistent with the claimant's allegations are an appropriate basis for evaluating credibility. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *Kepler*, 68 F.3d at 391; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). The Court finds no grounds for reversal on this basis.

Likewise Plaintiff's contention that he did not receive treatment because he could not afford it is not supported by the record. While it is true that Plaintiff did not receive epidural steroid injections in October 2006 because the Indian Health Service did not cover that procedure, there is no indication in the medical records that Plaintiff was denied medical treatment because of inability to pay. [R. 221-222]. Plaintiff testified that OSU Medical Clinic would not see him without money or insurance but he also testified that he had been receiving treatment from "Dr. Scott" and the Tulsa Indian Clinic for two years. [R. 268-269]. The record shows that Plaintiff did not receive physical therapy, but it does not reflect that it was because he could not afford the treatment. In February 2008, the Urban Clinic noted that Plaintiff did not go for physical therapy because he had no ride and had lost his driver's license. [R. 233]. He was advised to get transportation from friends and family. *Id.* A July 30, 2008, notation from the Urban Clinic indicates a discussion was held with Plaintiff over concerns regarding his "inability to follow-up with referrals." [R. 229]. At any rate, the ALJ did not find Plaintiff was not credible because he failed to seek medical treatment. He acknowledged Plaintiff's testimony that he did not receive cortisone shots and physical therapy because he has no money. [R. 16].

The ALJ's conclusion that Plaintiff "exaggerates at least some of his symptoms" and that his description of the severity of the pain was "so extreme as to appear implausible" was based upon his review of the evidence in its entirety, including the medical evidence that described Plaintiff's clinical findings as: negative neurologically [R. 147-150]; minimal multi-level degenerative disc disease with normal lumbar mylegram [R. 223, 225]; very minimal neural foraminal stenotic change, nothing significant [R. 239]; absence of disc pathology [R. 218]; MRI showing transitional lumbosacral vertebrae[2] otherwise unremarkable [R. 198]; and hip x-ray showing mild osteophytosis (bone spurs) but otherwise unremarkable [R. 197]; and the examination results reported by Sri K. Reddy, M.D. [R. 208-215]. The ALJ provided an extensive review of that medical evidence in his written decision. [R. 16-18]. Contrary to Plaintiff's argument, the medical record supports the ALJ's "comment" that Plaintiff did not consistently take medications as prescribed. [R. 125, 183, 184, 194, 195, 200, 229, 231, 241].

The ALJ recognized that Plaintiff demonstrated the required "loose nexus" between objective evidence of a pain producing impairment and his subjective allegations of pain as described in *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987). [15-18]. Contrary to Plaintiff's argument, the ALJ did not ignore relevant evidence. [Dkt. 20, p. 4]. He found that Plaintiff had severe impairments involving his hip, back and

_____

[2] Transitional lumbosacral vertebrae is where, prior to birth, one of the vertebrae does not form as part of the lumbar or sacral area and takes on characteristics of both the lumbar and sacral vertebrae. The term "transitional" means to be in a state of becoming something else. *See* medical terms definitions online at: http://www.medfriendly.com/transitionallumbosacral.html.

obesity and he assessed an RFC to accommodate limitations imposed by those impairments.

Although the ALJ did use the "boilerplate" language cited by Plaintiff, the ALJ nonetheless supported his ultimate credibility determination with specific evidence from the record. He discussed Plaintiff's allegation that his hips "shift" in and out of place, that he has a stiff neck, can't sit, stand or walk for very long "without pain" and his description of the severity of the pain. [R. 15]. The ALJ found those allegations were inconsistent with the descriptions of symptoms and limitations Plaintiff provided throughout the record and were extreme as to appear implausible. [R. 19].

The ALJ's decision makes clear that all the evidence was considered. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence). The Court finds the ALJ adequately set forth the specific evidence he relied on to assess Plaintiff's credibility and that his determination is supported by the record. *See Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991) (deferring to ALJ's credibility assessment where ALJ properly considered claimant's testimony in light of record evidence). To the extent that Plaintiff requests the Court to reweigh the evidence and substitute its judgment for that of the ALJ, the Court declines. *See Casias*, 933 F.2d at 800.

## **Step Four Findings**

Plaintiff's challenge to the ALJ's conclusion that he could perform his past work as a salad maker is premised upon the proposition that the ALJ's RFC determination was incorrect. [Dkt. 20, pp. 5-8]. Plaintiff does not, however, point to evidence that

conflicts with the ALJ's RFC assessment, other than his subjective complaints in histories given to medical care providers and in his testimony at the hearings. As previously explained, the Court has determined that the ALJ provided a sufficient link between the evidence and his determination that plaintiff's allegations of disabling pain were not credible and that the ALJ's credibility assessment is supported by substantial evidence in the record.

Regarding Plaintiff's complaint that the ALJ erred by not including depression or anxiety in his hypothetical to the vocational expert at the hearing, the Court agrees with counsel for the Commissioner that Plaintiff failed to demonstrate that his history of depression and anxiety, as well as a diagnosis of pain disorder, show that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities.[3] The mere presence of a condition--without any demonstrable work-related impact--will not support a disability claim. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997) (following *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); see also 20 C.F.R. § 404.1521.

The claimant bears the burden of proving a disability within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations."); *Bernal*, 851 F.2d at 301 (stating that a diagnosis does not "automatically mean" that a

---

[3] Plaintiff cites to the report by Kenneth R. Trinidad, D.O., who examined him once and reiterated the history Plaintiff gave him of severe anxiety/depression with panic attacks and reported Plaintiff's subjective complaints. [R. 177-178]. [Plaintiff's Reply Brief, Dkt. 22, p. 3]. The ALJ addressed Dr. Trinidad's report in his decision. [R. 18, 19-20]. Plaintiff does not point to any clinical findings that identify functional limitations imposed by mental impairments.

claimant is disabled.).  The claimant continues to bear the ultimate burden of proving

that he is disabled under the regulations through step four. *Channel v. Heckler*, 747 F.2d

577, 579 (10th Cir.1984).  Plaintiff failed to do so in this case.  Because the ALJ

properly found at step four that Plaintiff is able to perform his past relevant work,

Plaintiff's argument regarding potential findings at step five need not be addressed.

## Conclusion

The ALJ's decision demonstrates that he considered all of the medical reports

and other evidence in the record in his determination that Plaintiff retained the capacity

to perform his past relevant work. The record as a whole contains substantial evidence

to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the

decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 14th day of March, 2011.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE